IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BLOC PARTI, INC.**<br>1405 South Fern Street, Unit 99100<br>Arlington, VA 22202<br><br>         Plaintiff,<br><br>vs.<br><br>**POTOMAC PLACE CONDOMINIUM UNIT OWNERS' ASSOCIATION, INC.**<br>355 I Street, NW, Unit 305<br>Washington, DC 20024<br><br>Serve on:  *Resident Agent*<br>ResAgent, Inc.<br>1800 M Street, NW, Suite 450N<br>Washington, DC 20036<br><br>         Defendant. | Case No.: 1:20-CV-03127 |

## COMPLAINT

Plaintiff, BLOC Parti, Inc. ("BPI"), by its attorneys, Stephen P. Kauffman, Terry L. Goddard Jr., and Skeen & Kauffman LLP, sues the Defendant, Potomac Place Condominium Unit Owners' Association, Inc. ("Potomac"), and in support of its claims, states as follows:

### THE PARTIES

1. BPI is a corporation organized and in good standing under the laws of the Commonwealth of Virginia, and maintains its principal place of business in Arlington, Virginia. BPI provides construction-related services, including design, general contractor, and project management services.

2. Potomac is a corporation organized and in good standing under the laws of the District of Columbia, and maintains its principal place of business in the District of Columbia. Potomac is an association of condominium unit owners, which was formed to oversee the

operations of a condominium units located at 350 G Street and 355 I Street, SW, Washington, DC 20024 (the "Properties").

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in the District.

## FACTS COMMON TO ALL COUNTS

5. In late 2015 or early 2016, Potomac issued a request for bids to perform extensive renovations at the Properties (the "Work").

6. The Work included painting common areas, replacing light fixtures on each floor, replacing carpet and/or flooring on each floor, and generally providing the Properties with interior common area updating.

7. Each Property is a six (6) story building, with 24 condominium units on each floor.

8. BPI submitted an initial bid to perform design services, and on or about April 7, 2016 Potomac notified BPI that it was the successful bidder.

9. BPI performed the design services between April 7, 2016 and May 4, 2018.

10. On or about May 4, 2018, Potomac and BPI entered into a contract pursuant to which BPI, acting in the capacity of a general contractor and project manager, agreed to manage the performance of the Work by subcontractors to be hired by it (the "Contract") for a fixed price of $1,130,598 (the "Contract Sum"). A copy of the Contract is attached hereto as **Exhibit 1**.

11. On or about September 20, 2018, BPI entered into a subcontract with Premiere Works ("Premiere") pursuant to which Premiere agreed that it and/or its subcontractors would provide all trades Work at the Properties. A copy of the Subcontract is attached as **Exhibit 2**. Premiere and its subcontractors are sometimes collectively referred to as "BPI's Subcontractors."

12. After entering into and pursuant to the terms of the Contract, BPI began ordering and storing materials (the "Stored Materials") to be used in the performance of the Work, primarily high-end light fixtures and other materials, and performing some preliminary Services.

13. Under the terms of the Contract, BPI agreed to submit Applications and Certificates for Payment (the "Payment Applications") as these Services were performed, and as the Stored Materials were purchased, and Potomac agreed to pay the amounts BPI certified as being due in the Payments Application, less 10.00% retainage.

14. On or about May 25, 2018, BPI submitted its first Payment Application for a total of $339,181, less retainage of $33,918, and Potomac remitted the payment due $305,263. A copy of this first Payment Application is attached as **Exhibit 3**.

15. On or about November 5, 2018, BPI submitted its second Payment Application for a total of $328,688, less retainage of $32,868, but Potomac failed and refused to remit the payment due of $295,820. A copy of this second Payment Application is attached as **Exhibit 4**.

16. Potomac raised trivial and/or contrived issues to justify its delay in paying the amount due under the second Payment Application, but assured BPI that this amount, and all other amounts arising under the Contract as the Work was performed would eventually be paid.

17. The District of Columbia issued required building permits on or about March 7, 2019, and BPI and its Subcontractors began performing the construction Services promptly thereafter.

18. Under the terms of the Contract, the Work was to be substantially completed in eight (8) weeks.

19. BPI and its Subcontractors performed their Services in accordance with the terms of the Contract until May 10, 2019.

20. On May 10, 2019, despite the fact that BPI and its Subcontractors were performing the Work in accordance with the terms of the Contract, Potomac terminated the Contract **for Potomac's convenience, and without cause**, in accordance with §20.3 of the Contract. A copy of the Notice of Termination is attached as **Exhibit 5**.

21. §20.3 of the Contract provides that "[t]he Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. The Owner shall pay the Contractor for Work executed; and costs incurred by reason of such termination, including costs attributable to termination of Subcontracts (the "Balance Due upon Termination for Convenience").

22. The Balance Due upon Termination for Convenience as of May 10, 2019 was $542,535.34, not including accrued interest.

23. §4.1.5 of the Contract provides that interest will accrue at the rate of 3.00% on any balance due under the Contract, from the date due, until the date payment is received.

24. BPI submitted to Potomac a bill for the $542,535.34 Balance Due upon Termination for Convenience, but Potomac has failed and refused to pay.

25. The parties selected litigation as the method of binding dispute resolution for disputes arising under the Contract. *See* §5.1 of the Contract.

26. §§21.1 and 21.5 of the Contract contemplate that the parties will attempt to resolve any disputes by mediation before commencing a binding dispute resolution action.

27. On January 12, 2020 BPI sent a written communication to Potomac asking it to mediate this dispute. A copy of this communication is attached as **Exhibit 6**. Potomac failed to respond.

28. When Potomac failed to respond, BPI sent a second written communication to Potomac on February 1, 2020 advising that it intended to commence litigation if Potomac failed respond to its request for mediation. A copy of this communication is attached as **Exhibit 7**. Again, Potomac failed to respond.

## COUNTS

### Count I: Breach of Contract

29. The allegations of fact set forth in paragraphs 1 through 28 of this Complaint are incorporated herein by reference, as if set forth at length.

30. On May 4, 2018, BPI and Potomac entered into the Contract.

31. On May 10, 2019, BPI terminated the Contract for convenience and without cause.

32. Through the date of termination and thereafter, BPI had and has performed all its obligations under the Contract.

33. After Potomac terminated the Contract for convenience and without cause on May 10, 2019, the Balance Due upon Termination for Convenience was $542,535.34, plus accrued interest.

34. Despite BPI's repeated demands, Potomac has failed and refused to pay the Balance Due upon Termination.

35. Potomac's failure to pay the second Payment Application and the Balance Due upon Termination for Convenience are material breaches of the terms of the Contract.

36. As a result of Potomac's breach of the Contract, BPI has suffered damages totaling $542,535.34.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the amount of $542,535.34, plus interest, and costs.

### Count II: Intentional Interference with Contractual Relations

37. The allegations of fact set forth in paragraphs 1 through 36 of this Complaint are incorporated herein by reference, as if set forth at length.

38. At the time Potomac terminated the Contract for convenience on May 10, 2019 (the "Termination for Owner's Convenience"), Potomac knew of the existence of a subcontract between BPI and Premiere.

39. After Termination for Owner's Convenience, BPI did not formally terminate its subcontract with Premiere.

40. On information and belief, after Termination for Owner's Convenience, Potomac, through Ms. Tambe, hired Premiere and its subcontractors ("BPI's Subcontractors") to complete the Work.

41. On information and belief, after the Termination for Owner's Convenience, Potomac used PBI's designs, specifications, and other copyrighted instruments of service ("BPI's Instruments of Service") to complete the Work.

42. On information and belief, after the Termination for Owner's Convenience, Potomac used the Stored Materials that PBI had purchased to complete the Work.

43. Potomac's use of BPI's Subcontractors, Instruments of Service, and Stored Materials ("Potomac's Improper Actions") to complete the Work after the Termination for

Owner's Convenience were its intentional procurement of a breach of contract between BPI and BPI's Subcontractors.

44. As a direct and proximate result of Potomac's Improper Actions, BPI sustained damages in an amount to be proven at trial, but that are well in excess of $75,000.

**WHEREFORE**, Plaintiff BPI, demands judgment against Potomac in an amount to be proven at trial, but that is well in excess of $75,000.00 and punitive damages in an amount to be proven at trial, with interest and costs.

### Count III: Tortious Interference with Prospective Advantage (Alternative Count)

45. The allegations of fact set forth in paragraphs 1 through 44 of this Complaint are incorporated herein by reference, as if set forth at length.

46. In the alternative, even if BPI is deemed to have terminated it Subcontract with its Subcontractor after Potomac terminated the Contract for convenience on May 10, 2019, BPI post termination acts were nonetheless actionable.

47. On information and belief, after it terminated the Contract for convenience on May 10, 2019 (the "Termination for Owner's Convenience"), Potomac, through Ms. Tambe, hired BPI's Subcontractors to complete the Work.

48. On information and belief, after the Termination for Owner's Convenience, Potomac used BPI's designs, specifications, and other copyrighted instruments of service ("BPI's Instruments of Service") to complete the Work.

49. On information and belief, after the Termination for Owner's Convenience, Potomac used the Stored Materials that BPI had purchased to complete the Work.

50. Potomac's use of BPI's Subcontractors, Instruments of Service, and Stored Materials ("Potomac's Improper Actions") to complete the Work after the Termination for Owner's Convenience were its intentional and willful acts.

51. Potomac's Improper Actions were calculated to damage BPI by cheating it out of the profit it should have earned under the Contract.

52. Potomac took these Improper Actions for the unlawful and/or improper purpose of cheating BPI out of the profit it should have earned under the Contract.

53. Potomac took these Improper Actions without justification.

54. As a direct and proximate result of Potomac's Improper Actions, BPI sustained damages in excess of $75,000.00, which represent the profit that it would have made on Contract had it been permitted to finish its Work. *Bergmann v. Parker,* 216 A.2d 581 (D.C. 1966) Lost Profits §2.24

55. As a direct and proximate result of Potomac's Improper Actions, BPI sustained damages in an amount to be proven at trial, but that are well in excess of $75,000.

**WHEREFORE**, Plaintiff BPI, demands judgment against Potomac in an amount to be proven at trial, but that is well in excess of $75,000.00 and punitive damages in an amount to be proven at trial, with interest and costs.

Respectfully submitted this 29th day of October, 2020.

/s/ Stephen P. Kauffman
Stephen P. Kauffman (Bar No.: MD0043)
Terry L. Goddard Jr. (Bar No.: MD15460)
Skeen & Kauffman, LLP
9256 Bendix Road, Suite 102
Columbia, Maryland 21045
(410) 625-2228
skauffman@skaufflaw.com
tgoddard@skaufflaw.com
Attorneys for the Plaintiff

8